No. 15-60190

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

**AMBREA FAIRCHILD,**
*Plaintiff-Appellant*

**VERSUS**

**ALL AMERICAN CHECK CASHING, INCORPORATED, a Mississippi
Corporation,**
*Defendant-Appellee*

_____

**BRIEF OF APPELLANT**
_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

Keith Starrett, United States District Court Judge

DANIEL M. WAIDE                    JOHNSON, RATLIFF & WAIDE,
                                   PLLC

MISSISIPPI BAR NO. 103543          1300 Hardy Street
                                   Hattiesburg, MS 39401
                                   Telephone:  (601) 582-4553
                                   Facsimile:    (601) 582-4556
                                   E-mail: dwaide@jhrlaw.net


                    Attorneys for Plaintiff-Appellant

**No. 13-60838**

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

### AMBREA FAIRCHILD,
*Plaintiff*

### VERSUS

### ALL AMERICAN CHECK CASHING, INC.,
*Defendant*

_____

### AMBREA FAIRCHILD,
*Plaintiff-Appellant*

### VERSUS

### ALL AMERICAN CHECK CASHING, INC.,
*Defendant-Appellee*

_____

### CERTIFICATE OF INTERESTED PERSONS

_____

The undersigned counsel of record for the Appellant Ambrea Fairchild certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that Justices of the Supreme Court and/or the Judges of the Court of Appeals may evaluate possible disqualification or recusal pursuant to Rule 13.6.1 of the United States Court of Appeals for the Fifth Circuit.

iii

Ambrea Fairchild ...............................................PLAINTIFF-APPELLANT

All American Check Cashing, Inc ......................DEFENDANT-APPELLEE

Daniel M. Waide, Esq.
and the law firm of
Johnson, Ratliff & Waide, PLLC ....................................ATTORNEYS FOR
PLAINTIFF-APPELLANT

Robin Rasmussen, Esq.
Peter Baskind, Esq.
and the law firm of
Dinkelspiel, Rasmussen & Mink, PLLC .........................ATTORNEYS FOR
DEFENDANT-APPELLEE

Sandy Sams, Esq.
and the law firm of
Mitchell, McNutt & Sams, ...............................................ATTORNEY FOR
DEFENDANT-APPELLEE

Honorable Keith Starrett ...............PRESIDING DISTRICT JUDGE IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

Honorable Michael T. Parker .........PRESIDING MAGISTRATE JUDGE IN
THE UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF
MISSISSIPPI EASTERN DIVISION

CERTIFIED, on this the 15th day of June, 2015.


 _/s/ Daniel M. Waide_____
DANIEL M. WAIDE

## **STATEMENT REGARDING ORAL ARGUMENT**

1. Oral argument would be helpful because this civil action presents a unique question in whether Fairchild would be able to recover overtime compensation under the Fair Labor Standards Act where not all hours were originally reported to the employer, despite employer's knowledge of overtime worked.

2. Oral argument would be helpful because this civil action presents a question regarding the application of temporal proximity to pregnancy discrimination cases, wherein pregnancy discrimination is innately different from retaliation and other discrimination cases.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ............................................... iii, iv

STATEMENT REGARDING ORAL ARGUMENT ..............................................v

TABLE OF CONTENTS ................................................................. vi, vii

TABLE OF AUTHORITIES ............................................................... viii

     CASES ..................................................................... viii, ix

     OTHER AUTHORITIES ...................................................................x

STATEMENT OF JURISDICTION ....................................................xi

STATEMENT OF THE ISSUES ........................................................ xii

BRIEF

STATEMENT OF THE CASE ...............................................................1

STANDARD OF REVIEW .....................................................................7

SUMMARY OF ARGUMENT ................................................................7

ARGUMENT I ....................................................................................10

     WHETHER FAIRCHILD IS PRECLUDED FROM RECEIVING
     OVERTIME COMPENSATION BECAUSE COMPNAY POLICY
     REQUIRED PRIOR APPROVAL BEFORE WORKING OVERTIME

ARGUMENT II ...................................................................................15

     WHETHER AMBREA FAIRCHILD SHOULD HAVE BEEN ALLOWED
     TO TESTIFY REGARDING STATEMENTS MADE BY ANOTHER
     MANAGER, WENDY LAMBERT, WHO STATED THAT FAIRCHILD
     WAS TERMINATED BECAUSE OF FAIRCHILD'S PREGNANCY

ARGUMENT III ..................................................................................18

WHETHER AMBREA FAIRCHILD PRESENTED SUFFICEINT EVIDENCE OF TEMPORAL PROXIMITY TO MAKE A PRIMA FACIE CASE THAT FAIRCHILD WAS TERMINATED BECAUSE SHE WAS PREGNANT

ARGUMENT IV ................................................................................................21

WHETHER FAIRCHILD PRESENTED SUFFICIENT EVIDENCE UNDER MCDONNELL DOUGLAS TO MAKE A PRIMA FACIE CASE THAT FAIRCHILD WAS TERMINATED BECAUSE SHE WAS PREGNANT

CONCLUSION ...................................................................................................24

CERTIFICATE OF COMPLIANCE....................................................................25

CERTIFICATE OF SERVICE.............................................................................26

# TABLE OF AUTHORITIES

<u>CASES</u>:

*Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858 (5th Cir.1993) ...................17

*Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324 (5th Cir.1972)...........................13

*Cates v. Meldisco K–M 3730 Beltline Road, Texas, Inc.*, 1997 WL 118418 (N.D.Tex.1997)........................................................................................... 13, 14

*Clark County School District v. Breeden*, 532 U.S. 268 (2001)....................... 18, 19

*Cleveland v. City of Elmendorf, Tex.*, 388 F.3d 522 (5th Cir. 2004) .....................11

*Cunningham v. Gibson Elec. Co., Inc.*, 43 F.Supp.2d 965 (N.D.Ill.1999) .............13

*Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229 (5th Cir.2001). ........................7

*Hagan v. Echostar Satellite, LLC,* 529 F.3d 617 (5th Cir. 2008) ..............................7

*Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005)...........11

*Lyle v. Food Lion, Inc.*, 954 F.2d 984 (4th Cir.1992) ...........................................13

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)................. 18, 21, 22, 23

*Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir.1985) ......................................... 17

*Newton v. City of Henderson*, 47 F.3d 746 (5th Cir.1995)............................... 12, 13

*Portis v. First nat. Bank of New Albany, Miss,* 34 F.3d 325, 328 (5th Cir. 1994) .............................................................................................................. 17, 18

*Strong v. University Healthcare System, LLC.*, 482 F.3d 802 (5th Cir. 2007).........19

*Stone v. Parrish of East Baton Rouge*, 329 Fed. Appx. 542 (5th Cir. 2009) ...........21

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1984). ...............................17

*Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413(5th Cir.2006) .......................21

*Wood v. Mid-America Mgmt., Corp*, 192 Fed.Appx. 378 (6th Cir. 2006) ...............13

OTHER AUTHORITIES:

28 USC § 1291 ...................................................................................................xi

28 USC § 1331 ...................................................................................................xi

F.R.C.P. § 50 .......................................................................................................7

Fed. R. Evid. 801 ...................................................................................... 9, 16, 18

29 U.S.C. § 207 ..................................................................................................10

## <u>STATEMENT OF JURISDICTION</u>

The District Court asserted federal question jurisdiction over this action pursuant to 28 USC § 1331 and pursuant to Title VII of the Civil Rights Act of 1967. This Court has jurisdiction over the appeal from a final judgment of the District Court pursuant to 28 USC § 1291.

## STATEMENT OF THE ISSUES

1. Whether Fairchild is precluded from receiving overtime compensation because company policy required prior approval before working overtime.

2. Whether Fairchild should have been allowed to testify regarding statements made by another manager, Wendy Lambert, who stated that Fairchild was terminated because she was pregnant.

3. Whether Fairchild presented sufficient evidence of temporal proximity to make a *prima facie* case that Fairchild was terminated because she was pregnant.

4. Whether Fairchild presented sufficient evidence under *McDonnell Douglas* to make a *prima facie* case that Fairchild was terminated because she was pregnant.

## STATEMENT OF THE CASE

The Plaintiff - Appellant Ambrea Fairchild (hereinafter "Fairchild") filed her Complaint on May 6, 2013  in the United States District Court for the Southern District of Mississippi, Eastern Division. ROA 15-60190.32. Fairchild alleged violations of Title VII of the Civil Rights Act of 1967 alleging that Fairchild was terminated because of her pregnancy. ROA 15-60190.33. In addition, Fairchild alleged violations of the Fair Labor Standards Act based upon the Defendant – Appellee's failure to pay overtime wages for hours worked in excess of forty hours each week by Fairchild. ROA 15-60190.33. The matter proceeded to jury trial beginning on February 17, 2015 in Hattiesburg, Mississippi. Fairchild rested her case on February 18, 2015, at which time the Defendant – Appellee moved for a directed verdict, which was granted by the Court. A final judgment of dismissal was entered on February 20, 2015. ROA 15-60190.2438.  Fairchild filed her Notice of Appeal on March 18, 2015. ROA 15-60190.2471.

Fairchild began working for All American Check Cashing (herein after "Appellee") in December of 2011, and trained to be a manager trainee in the Hattiesburg, Mississippi store. ROA 15-60190.2669.

Appellee makes money by cashing checks, making payday advances, and in some locations, making title loans on vehicles. ROA 15-60190.2672. As a manager trainee, Fairchild was tasked with making reminder calls, due today calls, past due calls, and taking in new customers. ROA 15-60190.2670.

Fairchild trained for three days in Jackson, Mississippi before moving to Laurel, Mississippi for another month of training. ROA 15-60190.2670. Fairchild was a manager trainee and was paid on an hourly basis, thirteen dollars ($13) per hour. Id. Fairchild then moved to the Hattiesburg, Mississippi location in January of 2012. Id. Fairchild worked as a manager trainee from January 2012 until March of 2012, at which time Fairchild was promoted to manager. Id. As a manager trainee, Fairchild worked the majority of the time without a manager in her store. ROA 15-60190.2671. When Fairchild first began working in Hattiesburg, Mattie Taylor was the store manager. 60190.2670. Ms. Taylor was let go shortly after Fairchild began working in Hattiesburg. 60190.2671.

Fairchild was promoted to manager by her supervisor, Laura Falkner in March of 2012. ROA 15-60190.2671. Fairchild was promoted because her supervisors were proud of how she had been able to grow the store as a manager trainee. ROA 15-

60190.2672. As a manager, Fairchild was paid on a salary basis. ROA 15-60190.2691. As a manager, Fairchild performed essentially the same tasks as she performed as a manager trainee, in part because Fairchild did not have a manager at the store before her promotion. ROA 15-60190.2675.

Over the summer of 2012, Fairchild had a number of health issues which forced her to miss work. During this time, the store's performance began to decline, and Fairchild was demoted back to manager trainee. ROA 15-60190.2693. After being demoted back to manager trainee, Fairchild still worked ten (10) hours a day, fifty (50) hours a week, arriving each day at 8:00 a.m. and leaving each day at 6:00 p.m. Id. Fairchild was not paid for any hours worked more than forty during this time, nor was she paid any overtime compensation as a manager trainee. ROA 15-60190.2693.

Fairchild was required to work more than forty (40) hours per week, even as a manager trainee. ROA 15-60190.2694. Fairchild was not compensated for overtime because "overtime was a big no-no." Id. Fairchild's supervisors were well aware that Fairchild was working in excess of forty (40) hours per week because the supervisors were there with Fairchild working. ROA 15-60190.2836. Fairchild was paid a flat forty (40) hour week and the Defendant-Appellee did not ask Fairchild to clock in or out after her demotion. ROA 15-60190.2694. Fairchild did not document

3

all hours worked because the supervisor would get in trouble if Fairchild worked more than forty (40) hours per week. ROA 15-60190.2840.

During Fairchild's tenure with Appellee, Fairchild had three supervisors, Laura Falkner, Amanda Hearn, and Mark Hendricks. ROA 15-60190.2696. Laura Falkner was Fairchild's supervisor from December of 2011 until September of 2012. Id. Amanda Hearn became Fairchild's supervisor from September of 2012 until January of 2013, at which time Mark Hendricks became Fairchild's supervisor. ROA 15-60190.2697.

When Fairchild was a store manager, from March 2012 until September of 2012, Fairchild did receive several "write-ups. On May 10, 2012 Fairchild was given a conversation document because the cash drawer was one hundred dollars short that day. ROA 15-60190.2704. On July 13, 2012 Fairchild was written up for working too much as a manager. ROA 15-60190.2705. On August 20, 2012 Fairchild was written up for "general inefficiency" in the office, which was due to Fairchild's being in hospital and missing work. ROA 15-60190.2706. On September 10, 2012 Fairchild was given a document for careless mistakes, which was given to all managers of the Appellee at the time. ROA 15-60190.2707. On September 11, 2012 Fairchild was given a write up for general performance. ROA 15-60190.2708. Also on September 11, 2012, Fairchild was given a general inefficiency write up. ROA 15-60190.2708. These write-ups were made in preparation of demoting Fairchild.

4

On September 24, 2012, Fairchild was demoted to manager trainee and Daniel Fowler was promoted to manager, from manager trainee. ROA 15-60190.2713. Daniel Fowler also testified that the problems in the store were not Fairchild's fault, but rather, were due to understaffing. ROA 15-60190.2594.

Daniel Fowler had been Fairchild's subordinate prior to the demotion. Fairchild described her and Daniel Fowler's relationship as a "married couple relationship at work." ROA 15-60190.2714. Fairchild and Fowler would have a minor spat, over pointless details, and then get over it and get on with the day. Id.

While Fairchild was a manger trainee, working under Daniel Fowler, Fairchild did not exhibit performance issues. ROA 15-60190.2594-96. Mr. Fowler testified that Fairchild was a good employee. Id. Fairchild did her job as a manger trainee. ROA 15-60190.2595.

The only reprimand given by Daniel Fowler to Fairchild was a customer complaint. ROA 15-60190.2601. This customer complaint was given to all Hattiesburg store employees and not just Fairchild. ROA 15-60190.2615-17. Therefore, Fairchild received no individual write ups as a manager trainee.

In October or early November of 2012, Fairchild found out that she was pregnant. ROA 60190.2724. Fairchild informed her manager Daniel Fowler, and supervisor, Amanda Hearn, that she was pregnant in late November of 2012. ROA 15-60190.2724. Fairchild was worried about telling the company she was pregnant

5

because she was expecting to become a manager again, and Fairchild did not want the pregnancy to interfere with her being promoted. Id.

Fairchild was terminated in January of 2012, just two days after Mark Hendricks, a male supervisor, took Amanda Hearn's position as supervisor over the Hattiesburg, Mississippi store. ROA 15-60190.2697. Fairchild had just met Mark Hendricks the day before she was terminated. ROA 15-60190.2721. Mark Hendricks was aware that Fairchild was pregnant. ROA 15-60190.2722.

On the day of Fairchild's termination, Daniel Fowler told Fairchild that "it wasn't working out." ROA 15-60190.2719. Fairchild was not given a performance discussion record or any other document giving the reason for the termination. ROA 15-60190.2719. Daniel Fowler had been told by Mark Hendricks to terminate Fairchild. ROA 15-60190.2599. Daniel Fowler, Fairchild's manager, did not tell Mark Hendricks or anyone else with the company that he wanted Fairchild terminated. ROA 15-60190.2599. Neither Mark Hendricks, nor anyone else, told Daniel Fowler why Fairchild was terminated. ROA 15-60190.2600. Daniel Fowler testified that he did not complain to Mark Hendricks about Fairchild's job. ROA 15-60190.2602.

Daniel Fowler testified that, despite some of the personality conflicts between himself and Fairchild, he never told Mark Hendricks to terminate Fairchild because of those conflicts. ROA 15-60190.2602. After being terminated, Fairchild was told

by another manager, Wendy Lambert, that Fairchild was fired because she was
pregnant. ROA 15-60190.2747-48.

## STANDARD OF REVIEW

This court reviews a district court's ruling on a Rule 50 motion for judgment
as a matter of law de novo, applying the same standard as the district court.
*Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 235 (5th Cir.2001). Judgment
as a matter of law may be granted "[i]f a party has been fully heard on an issue
during a jury trial and the court finds that a reasonable jury would not have a
legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P.
50(a)(1). In deciding a motion for judgment as a matter of law, the Court views the
evidence in the light most favorable to the non-moving party. *Hagan v. Echostar
Satellite, LLC,* 529 F.3d 617, 622 (5th Cir. 2008)

## SUMMARY OF THE ARGUMENT

At trial the District Court granted the Appellee's Motion for Directed verdict
at the conclusion of Fairchild's case finding that because the Appellee had a policy
against hourly employees working overtime, Fairchild was not entitled to
compensation for the work she performed, even where the Court found that Fairchild
did in fact work in excess of forty hours a week without compensation. ROA 15-
60190.2884. This finding by the Court was in error and must be reversed because
the Fair Labor Standards Act requires an employee to be paid for all hours worked,

7

and to allow an employer to escape liability because of a policy against overtime would open a Pandora's Box, allowing an employer to passively allow employees to work overtime without compensation, especially where the employer is aware that the employee is working overtime.

The District Court also erred in finding that Fairchild was not entitled to compensation for overtime after being demoted because "there is no testimony that she was not paid overtime." ROA 15-60190.2889. However, Fairchild specifically testified that she was not paid for overtime after she was demoted, despite working fifty (50) hours per week for several months. ROA 15-60190.2693.

As part of her *prima facie* case of discrimination, Fairchild relied upon temporal proximity in regards to the time of her termination and her pregnancy being known to the Appellee. The Court found that temporal proximity did not apply to Fairchild's claims because, as the Court found, the company knew that she was pregnant in October. This finding by the Court was, respectfully, in error, because Fairchild's testimony was that she did not tell her managers or supervisors about her pregnancy until late November 2012. ROA 15-60190.2724. Further still, the person who terminated Fairchild, Mark Hendricks, had only been the supervisor for two days, meaning that temporal proximity was only two days removed.

In addition, temporal proximity should be applied differently in pregnancy discrimination cases because as time progresses, the plaintiff becomes "more pregnant" and the employer's incentive to discriminate actually increases.

Finally, at trial, Fairchild offered into evidence a statement made by another manager who said that Fairchild was terminated because she was pregnant, however the Court did not allow the statement into evidence because the statement was made at lunch. Fairchild should have been allowed to offer into the evidence the statement in accordance with Fed. R. Evid. 801(d)(2) as a statement made by the agent of the Defendant, on a matter within the scope of the relationship while the relationship existed.

This Court should vacate/reverse the District's granting of the Defendant-Appellee's motion for directed verdict in regards to Fairchild's Title VII claims and allow this matter to proceed to the jury. In addition, this Court should vacate/reverse the District Court's ruling in favor of Defendant-Appellee in regards to Fairchild's claims for overtime compensation because Fairchild worked in excess of forty (40) hours a week, and was not compensated in accordance with the Fair Labor Standards Act, regardless of what company policy stated.

## ARGUMENT I.

**WHETHER FAIRCHILD IS PRECLUDED FROM RECEIVING OVERTIME COMPENSATION BECAUSE COMPANY POLICY REQUIRED PRIOR APPROVAL BEFORE WORKING OVERTIME**

Fairchild worked for the Defendant-Appellee as a manager trainee from December 2011 until March 2012 and again from September 2012 until January 2013. For purposes of clarity, the period from December 2011 through March 2012 will be referred to a "Trainee One" and the period from September 2012 until January 2013 will be referred to as "Trainee Two." Fairchild was not compensated for overtime as a trainee because "overtime was a big no-no." ROA 15-60190.2694. The District Court found that Fairchild was not entitled to overtime compensation during Trainee One because Fairchild "wrote the script for FLSA litigation on her own and against company policy." ROA 15-60190.2884.

There is no issue or dispute that manager trainees are hourly employees and are not exempt from overtime compensation under the FLSA. ROA 15-60190.2900.

Generally, under the FLSA, "no employer shall employ any of his employees...for a workweek longer than forty hours unless such employee received compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

An employee alleging unpaid overtime under the FLSA must first demonstrate that he was (1) employed during the time for which compensation is sought and (2) performed work for which he was allegedly uncompensated. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). The employer bears the burden to prove an employee is exempt under the FLSA, and exemptions are narrowly construed. *Cleveland v. City of Elmendorf, Tex.*, 388 F.3d 522, 526 (5th Cir. 2004).

In the present matter, there is no issue regarding Fairchild's position as a manager trainee because Appellee has admitted that manager trainees are not exempt under the FLSA, and manager trainees are paid on an hourly basis. ROA 15-60190.2670. There is no dispute that Fairchild was employed during the time for which the compensation is sought.

The facts presented by Fairchild show that Fairchild worked for the Appellee as a manager trainee, on two separate occasions, and that Fairchild worked in excess of forty (40) hours per week. The District Court agreed that Fairchild had met her burden of proof in regards to Fairchild's FLSA claims. ROA 15-60190.2884.  The facts also show that Fairchild, as a manger trainee, was not paid for working these overtime hours. ROA 15-60190.2694.

It should also be noted, at this juncture, that the Appellee did not request that the Court dismiss any claims made by Fairchild for overtime compensation as a manager trainee, nor did the Appellee argue that Fairchild was not entitled to such. Rather, the Court, *sua sponte*, dismissed Fairchild's claims as a manager trainee.

### a. Fairchild is owed overtime compensation as Trainee One

When Fairchild first began working as a manager trainee, she was left to run her store without a manager. Fairchild testified that she would not be on the clock working because hourly employees were not supposed to work overtime. ROA 15-60190.2753. The problem is, Fairchild did not have a salaried manager to work the extra hours at the store, so in turn, Fairchild was forced to work overtime. There were, in fact, times when Fairchild would clock out and continue to work with her supervisor Laura Falkner present to avoid overtime hours. ROA 15-60190.2754. Fairchild would clock out to keep her supervisor, Laura Falkner, from getting in trouble. ROA 15-60190.2769.

Fairchild, using the computer usage reports which were identified at trial as P-5, testified that she worked, at a minimum, 18.36 overtime hours in January of 2012; 38.64 hours of overtime in February of 2012; and 60.5 hours of overtime in March of 2012. ROA 15-60190.2691. Fairchild was not paid for these overtime hours, either in straight time or overtime.

Any employer "who is armed with knowledge that an employee is working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation" *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir.1995). An employee is not estopped  from claiming additional overtime if the court finds "that the employer knew or had reason to believe that the [employee's] reported information was inaccurate" (*Newton*, 47 F.3d at 749, *quoting Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir.1972)).

The Sixth Circuit has addressed a similar issue in *Wood v. Mid-America Mgmt., Corp*, 192 Fed.Appx. 378 (6th Cir. 2006) stating:

> At the end of the day, an employee must show that the employer knew or should have known that he was working overtime or, better yet, he should report the overtime hours himself. Either way, the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions. An employer cannot satisfy an obligation that it has no reason to think exists. And an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid.

*Wood* at 381.

The Fourth Circuit has held that an employee may recover for overtime hours, worked "off the clock," where the employee can show that the employer was aware of the hours being worked off the clock. *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987–88 (4th Cir.1992); *Cunningham v. Gibson Elec. Co., Inc.*, 43

13

F.Supp.2d 965, 976 (N.D.Ill.1999) (finding that the employer had knowledge of unpaid overtime based on evidence that the supervisor instructed the plaintiff-employee not to report overtime hours worked). And in *Cates v. Meldisco K–M 3730 Beltline Road, Texas, Inc*., 1997 WL 118418 (N.D.Tex.1997), the plaintiff, a manager who claimed that he regularly underreported his hours to remain within budget for the payroll, was met with the employer's argument that his failure to report the overtime hours on his time sheets barred his FLSA claim. Id. at *1, 2. The plaintiff submitted an affidavit stating that he told his superiors that he was working "off the clock" to fulfill his duties and that he was encouraged or forced to underreport his hours on his time sheets. The court denied the employer's motion for summary judgment, holding that the plaintiff's affidavit raised a fact issue as to whether the payroll forms were reliable and whether his employer knew he was working unpaid overtime. Id. at *4.

In the present matter, the evidence shows that the Appellee knew that Fairchild was working more than forty (40) hours a week, and allowed Fairchild to work off the clock and benefit from Fairchild's free labor. Laura Falkner, Fairchild's supervisor, was working with Fairchild after the company was aware that Fairchild had clocked out. Fairchild was forced to choose between making her supervisor happy, or staying on the clock. Fairchild simply chose to keep her job and make her supervisor happy and Fairchild is entitled, in accordance with the

14

FLSA to compensation for the hours she worked in excess of forty (40) as a manager trainee, especially where the Appellee, through its agents, was well aware that Fairchild was working overtime without compensation.

### b. Fairchild is owed overtime compensation as Trainee Two

In late September of 2012 Fairchild was demoted to a non-exempt position, manager trainee. ROA 15-60190.2713. After being demoted, Fairchild worked fifty (50) hours per week, but did not receive overtime compensation. ROA 15-60190.2694. Fairchild was terminated in January of 2013.

The District Court found that the "there is no testimony that she [Fairchild] was not paid overtime." ROA 15-60190.2889. However, Fairchild specifically testified that she was not paid for overtime after she was demoted, despite working fifty (50) hours per week for several months. ROA 15-60190.2693.

Fairchild has argued *supra* that she is entitled to the claimed overtime, and that Appellee was aware of the overtime hours being worked. Fairchild's testimony establishes that she was not paid for overtime worked as Trainee Two. The Court erred in finding that Fairchild had not produced testimony that she was not paid, and therefore, the District Court's ruling must be reversed, and Fairchild must be allowed to recover overtime compensation under the FLSA.

## ARGUMENT II.

**WHETHER AMBREA FAIRCHILD SHOULD HAVE BEEN ALLOWED TO TESTIFY REGARDING STATEMENTS MADE BY ANOTHER MANAGER, WENDY LAMBERT, WHO STATED THAT FAIRCHILD WAS TERMINATED BECAUSE OF FAIRCHILD'S PREGNANCY**

### a. The Court erred by not allowing Fairchild to testify regarding the statements made by Wendy Lambert

During Fairchild's testimony, Fairchild sought to introduce evidence regarding a statement by Wendy Lambert that Fairchild had been terminated because she was pregnant. ROA 15-60190.2747-48. Wendy Lambert was the manager at the store in Laurel, Mississippi at the time the conversation took place. ROA 15-60190.2747. The Court stated that because the statement was made at a social occasion, lunch, the statement was inadmissible. Id.

In accordance with Fed. R. Evid. 801 (d)(2):

(d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay:

(2) An Opposing Party's Statement. The statement is offered against an opposing party and:

(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed;

At trial, Fairchild sought to introduce the statement of Wendy Lambert who was a manger of the Appellee and who was making the statement while still employed by the Appellee. ROA 15-60190.2747. The Court sustained an objection by the Appellee and held the statement inadmissible as hearsay because the

16

statement was made at lunch. Respectfully, this decision by the Court was made in error because the statement made by Wendy Lambert was made as an employee of the Appellee on a matter within the scope of the employment relationship with Appellee and while the relationship existed. The ruling of the District Court must be reversed, and Fairchild allowed to testify regarding the statements made by Wendy Lambert, an agent of the Appellee. This decision by the District Court constitutes reversible error, especially given the prejudicial effect the Court's ruling had upon Fairchild's case.

> **b. The statements made by Wendy Lambert constitute direct evidence of pregnancy discrimination**

These statements, made by Wendy Lambert, constitute direct evidence that Fairchild was terminated because Fairchild was pregnant. "Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption." *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993). In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face. *See Vaughn*, 918 F.2d at 521; *Miles v. M.N.C. Corp.*, 750 F.2d 867, 870 (11th Cir.1985) (holding "discriminatory statements and admissions" to be direct evidence).

In *Portis v. First nat. Bank of New Albany, Miss* the Fifth Circuit stated:

A plaintiff may use either direct or circumstantial evidence to prove a case of intentional discrimination. *Aikens*, 460 U.S. at 714 n. 3, 103 S.Ct. at 1481 n.

3. Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in McDonnell Douglas. This test establishes a prima facie case by inference, but it is not the exclusive method for proving intentional discrimination. "[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1984).

34 F.3d 325, 328 (5th Cir. 1994)

Because the statements made by Wendy Lambert would constitute direct evidence of discrimination, the Court would have needed to go no further under the *McDonnell Douglas* test because Fairchild's burden of proof, to survive Defendant-Appellee's motion for directed verdict, would have been met. Wendy Lambert's statement was "sufficient evidence of intentional discrimination to warrant presentation of [Fairchild's] case to a jury." *See Portis* at 328.

The prejudicial effect of the Court's ruling, not allowing Fairchild to testify regarding Wendy Lambert's statement under F.R.E. 801(d)(2), was irreparable, and the directed verdict entered in favor of the Defendant-Appellee must be vacated, and the matter remanded for a new trial.

## ARGUMENT III.

### AMBREA FAIRCHILD PRESENTED SUFFICEINT EVIDENCE OF TEMPORAL PROXIMITY TO MAKE A PRIMA FACIE CASE THAT FAIRCHILD WAS TERMINATED BECAUSE SHE WAS PREGNANT

**a. Fairchild made a *prima facie* showing that her termination was in temporal proximity to the decision maker gaining authority to terminate Fairchild**

18

In *Clark County School District v. Breeden*, the Supreme Court noted that "cases that accept mere temporal proximity ... as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.' " 532 U.S. 268, 273 (2001) (emphasis added). *Breeden* makes clear that (1) to be persuasive evidence, temporal proximity must be very close, and importantly (2) temporal proximity alone, when very close, can in some instances establish a *prima facie* case of retaliation. *See id*. But the Fifth Circuit affirmatively rejected the notion that temporal proximity standing alone can be sufficient proof of but for causation. *Strong v. University Healthcare System, LLC*., 482 F.3d 802, 808 (5th Cir. 2007). Fairchild does not argue that temporal proximity should support but for causation in this matter.

In the present matter, at trial, Fairchild presented testimony which showed that a mere two (2) days after becoming supervisor, Mark Hendricks terminated Fairchild. Two (2) days is "very close." The fact that other supervisors may have known about Fairchild's pregnancy is irrelevant and immaterial because the other supervisors were not the decision maker at the time of the termination. The decision maker's knowledge and ability to effectuate the termination are the key factors in this case. Two days is more than sufficient to establish temporal proximity based upon Fifth Circuit precedent as "very close."

Further, the Court erred in finding that the Appellee had known about Fairchild's pregnancy since October of 2012. Fairchild testified that she did not inform the Defendant-Appellee until late November 2012 about her pregnancy. ROA 15-60190.2724. Fairchild was terminated on January 23, 2013 which, at most, was two months after Fairchild notified the Appellee that she was pregnant. At the very least, the timing and temporal proximity question is a question of fact which should be determined by a jury.

### b. Alternatively, Temporal proximity, in regards to pregnancy discrimination, should be judged separately from retaliation cases because pregnancy becomes more prevalent over time

Fairchild should be allowed to rely upon temporal proximity to make a *prima facie* case of pregnancy discrimination. It should be noted, almost without any further proof that as time progresses, so does the employee's limitations at work because of pregnancy. A woman who has just found out that she is pregnant, does not typically have the same limitations at work as does a woman who has entered into her final trimester. Put simply, the more pregnant an employee is, the more incentive an employer has to discriminate against the employee.

In regards to temporal proximity, an employer has increased incentive to terminate an employee the closer in time the employee is to the birth of the child. In the typical pregnancy, there are fewer doctor visits in the first trimester than there are in the final trimester. Indeed, the employee is not going to be off work until the

end of the pregnancy, and the employer will not be providing, much, if any accommodations for the pregnancy in the beginning.

Title VII cases, specifically pregnancy discrimination cases are vastly different from other cases in regards to temporal proximity. In retaliation cases, it is essentially assumed that the further removed in time the adverse employment decision is from the event complained of as retaliatory, the less likely the adverse decision is related to the action. Likewise, in a race discrimination matter, the further in time that a racist comment is removed from the adverse action, the less likelihood the comments are related to the adverse action. *See Stone v. Parrish of East Baton Rouge*, 329 Fed. Appx. 542, 546 (5th Cir. 2009).

In considering the innate differences between a pregnancy discrimination claim and a retaliation claim in regards to temporal proximity, the Court should look beyond simply when the pregnancy was reported, and look at the totality of the circumstances, in addition to when the employee first reports the pregnancy when deciding a *prima facie* case based upon temporal proximity.

## ARGUMENT IV.

**WHETHER FAIRCHILD PRESENTED SUFFICIENT EVIDENCE UNDER MCDONNELL DOUGLAS TO MAKE A PRIMA FACIE CASE THAT FAIRCHILD WAS TERMINATED BECAUSE SHE WAS PREGNANT**

To establish a prima facie[1] case of pregnancy discrimination under Title VII or Chapter 21, Fairchild must show that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated were more favorably treated. *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 420–21 (5th Cir.2006).

The law is well established, under *McDonnell–Douglass*, that once Fairchild has made a *prima facie* case of discrimination, the burden then shifts to the Defendant to provide a legitimate, non-discriminatory reason for termination. 411 U.S. 792, 826–27 (1973). [2]

There is no dispute that as a pregnant employee, Fairchild was a member of a protected class. There is also no dispute that Fairchild's termination constitutes an adverse employment action. At trial, the testimony of Fairchild's direct supervisor, Daniel Fowler, showed that Fairchild did not exhibit performance issues. ROA 15-60190.2594-96. Fairchild was a good employee. Id. Fairchild did her job as a manger trainee.    ROA 15-60190.2595. Based upon this testimony, by Daniel Fowler, Fairchild was qualified for the position.

---

[1] Outside of temporal proximity and direct evidence
[2] Notwithstanding the fact that Fairchild may rely on temporal proximity in supporting her *prima facie* case of discrimination.

The evidence also shows that Daniel Fowler, a male employee at the Hattiesburg store, was not terminated, despite the performance issues that the store allegedly exhibited. ROA 15-60190.2723.

At trial, Fairchild was asked numerous questions regarding her performance and her relationship with her manager, Daniel Fowler. There is presently no proof in the record regarding the actual reason for Fairchild's termination. Daniel Fowler, Fairchild's manager, did not tell Mark Hendricks or anyone else with the company that he wanted Fairchild terminated. ROA 15-60190.2599. Neither Mark Hendricks, nor anyone else, told Daniel Fowler why Fairchild was terminated. ROA 15-60190.2600. Daniel Fowler testified that he did not complain to Mark Hendricks about Fairchild's job. ROA 15-60190.2602.

Under *McDonnell Douglas*, Fairchild met her burden of showing a *prima facie* case of discrimination. Fairchild was a pregnant employee, who was qualified for her position and suffered an adverse employment action. Another employee in the Hattiesburg store, Daniel Fowler, a male, was not terminated.

Because Fairchild has made, on multiple levels[3], a *prima facie* case of discrimination, the Court erred in granting a directed verdict in favor of the Defendant-Appellee, and this matter must be remanded for a new trial.

## **CONCLUSION**

---

[3] Direct Evidence of statement by Wendy Lambert and temporal proximity

23

Ambrea Fairchild worked hundreds of hours of overtime for the Appellee without any compensation, either in straight time or overtime. Fairchild did not document these hours to keep her supervisor from getting in trouble, and Fairchild's supervisors were well aware that Fairchild was working these hours without compensation. Fairchild is entitled to compensation for the hours she worked, which went undocumented because the Appellee wanted the hours kept undocumented.

Ambrea Fairchild was terminated because she was pregnant, and Fairchild should be allowed to rely upon the statement of Wendy Lambert as direct evidence that Fairchild was terminated because she was pregnant. In addition, Fairchild has made a *prima facie* case of discrimination using temporal proximity as well as circumstantial evidence under *McDonnell-Douglas.*

The District Court erred by granting the Appellee's motion for directed verdict, and this Court should reverse in part, vacate in part, and remand this matter for a new trial.

RESPECTFULLY SUBMITTED, this the 15th day of June 2015.

**AMBREA FAIRCHILD**
PLAINTIFF - APPELLANT


    /s/   *Daniel M. Waide*
DANIEL M. WAIDE, MSB #103543

Attorneys for Appellant

## **CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,245 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Office Word 2010, in 14-point Times New Roman font (except for footnotes, which are in 12-point Times New Roman font, as permitted by Fifth Circuit Rule 32.1).

3. The undersigned understands a material misrepresentation in completing this certificate or circumvention of the type-volume limits in Fed. R. App. P. 32(a)(7), the typeface requirements of Fed. R. App. P. 32(a)(5), or the type style requirements of Fed. R. App. P. 32(a)(6) may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

SO CERTIFIED, this the 15th day of June, 2015.

*/s/ Daniel M. Waide*
DANIEL M. WAIDE
Attorney for Appellant

## CERTIFICATE OF SERVICE

I, the undersigned attorney for the Appellant, do hereby certify that on this date, I have electronically filed the foregoing Brief of Appellant with the Clerk of the Fifth Circuit Court of Appeals using the FEC system which sent notification of such to the following:

Sandy Sams, Esq                          Ssams@mitchellmcnutt.com
Mitchell, McNutt & Sams
P. O. Box 7120
Tupelo, MS 38802-7120


Megan Black, Esq.
Dinkelspiel Rasmussen & Mink, PLLC
1669 Kirby Parkway  Suite 106
Memphis, TN  38120


This the 15th  day of June, 2015.


By:*/s/ Daniel M. Waide*_____
        DANIEL M. WAIDE



OF COUNSEL:

Daniel M Waide, MS Bar #103543
Johnson, Ratliff & Waide, PLLC
1300 Hardy St.
PO Box 17738
Hattiesburg, MS 39404
601-582-4553 (Office)
601-582-4556 (Fax)